GREEN v ZIEGELMAN

Docket No. 280624. Submitted January 7, 2009, at Detroit. Decided
February 3, 2009, at 9:10 a.m.

 Sanford Green, Jack R. Hendrickson, and Thomas Esper brought an
action in the Oakland Circuit Court against Norman H. Ziegelman
(Ziegelman), seeking a declaratory judgment on the proper inter-
pretation of an arbitration agreement contained in the operating
agreement of Libwag, LLC, which was formed by Green, Hendrick-
son, Esper, and Ziegelman to undertake a real estate development
project. The court, Denise Langford Morris, J., granted summary
disposition in favor of the plaintiffs, determined that the dispute
must be arbitrated by four arbitrators, and ordered the case to
arbitration. Pursuant to an arbitration agreement executed by
Green, Hendrickson, Esper, Libwag, Ziegelman, Norman H.
Ziegelman Architects, Inc. (NZA) (of which Ziegelman is the sole
shareholder and which entered into a contract with Libwag to
provide architectural services), and Continental Construction
Company (of which Ziegelman is the sole shareholder and which
entered into a contract with Libwag to provide construction
services), the parties agreed to resolve in arbitration disputes that
they specified in a list. No mention was made regarding any claim
against Ziegelman individually for breach of the architectural
agreement between NZA and Libwag, including any claim that
Ziegelman was liable for a breach of the architectural agreement
predicated on a liability theory of piercing the corporate veil of
NZA. The arbitration panel concluded, in relevant part, that NZA
breached the architectural agreement and that the plaintiffs were
entitled to damages from NZA for the breach. The plaintiffs then
filed a motion in the circuit court to reopen the case, add Libwag
as a plaintiff and NZA and Continental as defendants, and have a
judgment entered on the arbitration award. The plaintiffs again
did not advance any claim against Ziegelman individually or based
on theories of piercing the corporate veil. The court granted the
plaintiffs' motion and entered a money judgment in favor of the
plaintiffs and against NZA. Nowhere in the judgment did it
provide that Ziegelman was liable for breach of the architectural
agreement. The plaintiffs then filed an ex parte motion under the
proceedings supplementary to judgment act (PSJA), MCL

600.6101 *et seq.*, and MCR 2.621, seeking, in part, to depose Ziegelman about the assets of NZA. The court granted the motion. Following the deposition, the plaintiffs filed a motion to pierce the corporate veil and impose personal liability on Ziegelman in the amount equal to the plaintiffs' judgment against NZA for breach of the architectural agreement. The court granted the motion and entered a judgment against Ziegelman individually. The defendants appealed with regard to the judgment against Ziegelman individually.

The Court of Appeals *held*:

The plaintiffs could not use the proceedings supplementary to the initial judgment against NZA to have another judgment entered holding Ziegelman personally liable because there was no underlying arbitration award or judgment to that effect. In a proceeding supplementary to an initial judgment, MCR 2.621 and the PSJA do not provide any authority for entering an additional judgment against a party not previously subject to a judgment on the claim at issue if the additional judgment is based on a theory of piercing the corporate veil of the defendant corporation against which the original judgment was entered. Neither the court rule nor the statute gave the circuit court authority to pierce NZA's corporate veil and hold Ziegelman personally liable. The judgment against Ziegelman for breach of the architectural agreement and predicated on the piercing of the corporate veil must be vacated.

Vacated.

*Stephen M. Ryan, P.L.L.C.* (by *Stephen M. Ryan*), for the plaintiffs.

*Mark Granzotto, P.C.* (by *Mark Granzotto*), for the defendants.

Before: MURPHY, P.J., and K. F. KELLY and DONOFRIO, JJ.

MURPHY, P.J. Defendants appeal as of right a $156,313 judgment entered by the circuit court in favor of plaintiffs and against defendant Norman H. Ziegelman (Ziegelman), individually, on plaintiffs' claim of breach of an agreement for architectural services. Ziegelman's

liability for the breach was determined postjudgment through proceedings supplementary to the initial judgment, and liability was predicated on an alter ego theory, with the court piercing the corporate veil of a corporation owned by Ziegelman. The initial judgment on the claim for breach of the architectural agreement, which judgment was founded on an arbitration award, was entered solely against defendant Norman H. Ziegelman Architects, Inc. (NZA). We vacate the judgment at issue.

Plaintiffs Sanford Green, Jack R. Hendrickson, and Thomas Esper, along with defendant Ziegelman, were all members of plaintiff Libwag, LLC, which was formed to undertake a real estate development project. The Libwag operating agreement contained an arbitration provision for purposes of settling disputes arising out of the agreement. Shortly after the development project commenced, Libwag entered into architectural and construction contracts with, respectively, NZA and defendant Continental Construction Company (Continental). Ziegelman was the sole shareholder of both NZA and Continental.

A dispute arose concerning the development project and the operating agreement, and Ziegelman demanded arbitration for an alleged breach of the operating agreement, which plaintiffs denied, making their own claim that Ziegelman breached the operating agreement. The parties also disagreed regarding the proper composition of the arbitration panel and the scope of the arbitration provision. Given the dispute, plaintiffs, except for Libwag, filed a declaratory judgment action in the circuit court against Ziegelman, seeking the proper interpretation of the arbitration provision contained in the operating agreement with respect to its scope and the number of arbitrators to sit in judgment. Ziegelman

then filed a motion for summary disposition and to compel arbitration. The circuit court, pursuant to MCR 2.116(I)(2), granted summary disposition in favor of plaintiffs, ruling that it had the authority to address the issue concerning the number of arbitrators to be selected and that the dispute must be arbitrated by four arbitrators, as argued by plaintiffs, and not one, as argued by Ziegelman. The circuit court ordered the case to arbitration.

Pursuant to an arbitration agreement thereafter executed by all plaintiffs and all defendants, the parties agreed to arbitrate: (1) all issues by and between Libwag and NZA arising under the architectural agreement, with the arbitration award being final and binding upon the parties to that agreement, (2) all issues by and between Libwag and Continental arising under the construction contract, with the arbitration award being final and binding upon the parties to that agreement, and (3) all issues by and between NZA and Libwag and Hendrickson that were currently pending in a federal district court lawsuit involving copyright infringement claims.[1] The agreement expressly superseded the arbitration provisions found in the architectural and construction contracts. Pursuant to the Libwag operating agreement, the alleged breaches of the agreement were also set to be arbitrated under the agreement's arbitration provision. It is abundantly clear that the parties had decided to resolve all their disputes in arbitration. No mention was made regarding a claim against Ziegelman individually for breach of the architectural agreement, let alone a claim that he was liable for a breach of

---

[1] The arbitration award indicates that NZA and Continental had earlier initiated separate arbitration proceedings against plaintiffs alleging contractual breaches arising out of the architectural and construction contracts, which both had their own arbitration provisions.

the architectural agreement predicated on a liability theory of piercing the corporate veil.

The issues and disputes were arbitrated, and the arbitration panel rendered an award concluding that NZA had breached the architectural agreement and that plaintiffs were entitled to a damages award of $156,313 against NZA for the breach.[2] The arbitration panel also found that Ziegelman himself had breached the operating agreement and that his membership interest in Libwag had to be reduced to 7¹/₂ percent because of the breach.[3] Further, the arbitration panel ruled that neither side had demonstrated a breach of the construction contract. Finally, the arbitration panel concluded that NZA had failed to establish its copyright infringement claims, which had been the subject of the federal lawsuit.

Plaintiffs then proceeded to file a motion in the circuit court to reopen the case, to add Libwag, NZA, and Continental as parties, given that they were not named in the complaint seeking declaratory relief, and to enter judgment upon the arbitration award. Plaintiffs made no attempt at this point to pursue a claim against Ziegelman personally for breach of the architectural agreement, nor was any theory posited regarding the need to pierce the corporate veil. Subsequently, the circuit court entered an order granting plaintiffs' motion. The order provided that judgment was to be entered pursuant to the arbitration award. A judgment, entered the same day that the order granting plaintiffs' motion was granted, provided, in relevant part, that NZA had breached the architectural agreement. The judgment also stated:

---

[2] The arbitration panel rejected NZA's claim alleging breach of the architectural agreement.

[3] The arbitration panel rejected Ziegelman's claim that plaintiffs had breached the operating agreement.

> IT IS FURTHER ORDERED AND ADJUDGED that Libwag and Green and Hendrickson and Esper shall have Judgment in favor of them and against [NZA] in the amount of $156,313.00, plus statutory interest from and after April 27, 2006, and execution shall so issue therefore.

Nowhere in the judgment is it provided that Ziegelman was liable for breach of the architectural agreement.

Approximately three months later, plaintiffs filed an ex parte motion under the proceedings supplementary to judgment act (PSJA), which is found at MCL 600.6101 *et seq.*, and MCR 2.621. In the motion, plaintiffs requested an order requiring NZA to produce a laundry list of financial records and documents, requiring Ziegelman, as president of NZA, to appear for a discovery hearing in order to testify regarding NZA assets, and requiring NZA to produce certain documents at the discovery hearing. Plaintiffs also sought an order restraining NZA from transferring assets. Plaintiffs further requested that, "if it appears on hearing hereof that other parties hold in their names property beneficially or equitably belonging to [NZA], such parties may be joined in this proceeding." An order granting the motion was subsequently entered, but it said nothing about any other party being joined in the supplementary proceedings. Ziegelman then submitted to a discovery deposition as president of NZA. The deposition revealed that NZA had no assets and only $400 in accounts receivable. It also revealed evidence that arguably could serve as a basis for piercing NZA's corporate veil and holding Ziegelman personally liable, suggesting that NZA was nothing more than Ziegelman's alter ego.[4] On the strength of the deposition, plaintiffs filed a motion to

---

[4] "The law treats a corporation as an entirely separate entity from its shareholders, even where one individual owns all the corporation's

pierce the corporate veil, asking the circuit court to impose personal liability on Ziegelman in the amount of $156,313, which represented the judgment against NZA for breach of the architectural agreement. The circuit court granted the motion to pierce NZA's corporate veil and ruled that Ziegelman was personally liable in the amount of $156,313. The circuit court, ruling from the bench, reasoned:

> Contrary to defendant's assertion, MCR 2.621 allows the plaintiff[s] to, by motion or by a separate action, obtain relief supplementary to entry of the judgment.
>
> MCL 600.6104 provides that after money judgment has been rendered the judge may on motion in that action or in a subsequent action make any order as within their discretion whatever seems appropriate in regard to the carrying out the full intent and purpose and to subject any nonexempt assets of any judgment debtor to the satisfaction of judgment.
>
> Therefore, after careful examination of the relevant facts and the Court having heard the representations here

---

stock." *Rymal v Baergen*, 262 Mich App 274, 293; 686 NW2d 241 (2004). The protection afforded by a corporate veil can be pierced under certain circumstances:

> "The traditional basis for piercing the corporate veil has been to protect a corporation's creditors where there is a unity of interest of the stockholders and the corporation and where the stockholders have used the corporate structure in an attempt to avoid legal obligations." . . .
>
> For the corporate veil to be pierced, the corporate entity must be a mere instrumentality of another individual or entity. Further, the corporate entity must have been used to commit a wrong or fraud. Additionally, and finally, there must have been an unjust injury or loss to the plaintiff. There is no single rule delineating when a corporate entity should be disregarded, and the facts are to be assessed in light of a corporation's economic justification to determine if the corporate form has been abused. [*Id.* at 293-294 (citations omitted).]

in open court, this court finds that all of the factors
required for piercing the corporate veil are present[.]

Judgment against Ziegelman individually was en-
tered, and his attempts to have the circuit court recon-
sider or reexamine its ruling were rejected. Defendants
appeal as of right.

On appeal, defendants argue that the circuit court
erred by entering the judgment against Ziegelman,[5]
given that plaintiffs failed to satisfy the compulsory
joinder rule, MCR 2.203, by not joining a claim for
breach of the architectural agreement, predicated on
piercing of the corporate veil, against Ziegelman indi-
vidually. Defendants also argue that res judicata barred
entry of the judgment against Ziegelman individually,
that the court erred in deciding the corporate veil issue
in the context of a postjudgment motion comparable to
summary disposition, and that the court erred in its
initial decision ordering arbitration before a panel of
four arbitrators. We conclude that plaintiffs could not
use a proceeding supplementary to the initial judgment
to have another judgment entered holding Ziegelman
personally liable where there was no underlying arbi-
tration award or judgment to that effect.

Many of the arguments presented by the parties
concern legal questions, including interpretation of
MCR 2.203, MCR 2.621, and the PSJA, as well as the
applicability of res judicata. Questions of law, such as
statutory interpretation, court rule construction, and
whether the doctrine of res judicata should have been

_____

[5] When we refer to the judgment against Ziegelman, we are speaking of
the judgment awarding plaintiffs $156,313 in damages, which has as its
foundation the breach of the architectural agreement and the piercing of
the corporate veil; the judgment against Ziegelman that reduced his
membership interest in Libwag for breach of the operating agreement is
not at issue on appeal.

invoked, are reviewed de novo on appeal. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008); *Mt Pleasant v State Tax Comm*, 477 Mich 50, 53; 729 NW2d 833 (2007); *Waknin v Chamberlain*, 467 Mich 329, 332; 653 NW2d 176 (2002); *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 553; 640 NW2d 256 (2002). Additionally, with respect to defendants' argument that the circuit court erred in its summary disposition ruling that ordered the case to be heard by four arbitrators, we review summary disposition determinations de novo. *Kreiner v Fischer*, 471 Mich 109, 129; 683 NW2d 611 (2004).

We start with the issue concerning the composition of the arbitration panel. As now argued by defendants, there does appear to be some ambiguity in the arbitration provision contained in the Libwag operating agreement regarding the number of arbitrators. It indicates that each member, within an allotted time, could appoint an arbitrator if there was no agreement on the selection of a single arbitrator, but it then provides that "[t]he *two arbitrators* [so selected] shall then select a third arbitrator . . . ." (Emphasis added.) Libwag, however, had four members. Defendants maintain that this contractual ambiguity precluded the entry of the order granting summary disposition and required resolution at trial. We need not further address this issue because Ziegelman never presented this argument below. Instead, Ziegelman argued that the parties' disputes must be arbitrated, that determining the proper number of arbitrators to hear the case was itself an issue to be resolved in arbitration proceedings by the single arbitrator appointed by Ziegelman, and that he disagreed with plaintiffs' contention that three more arbitrators should be appointed, given that their "nominations were not timely." An issue is not properly preserved for appeal if not raised in the circuit court, and we need not address arguments first raised on appeal. *Booth News-*

*papers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993); *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005); *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 117; 662 NW2d 387 (2003). Accordingly, we decline to address defendants' argument that the arbitration provision was ambiguous with respect to the composition of the arbitration panel.[6]

We next turn to the issue concerning the proper interpretation and application of MCR 2.621 and the PSJA.

The principles that apply to statutory construction apply equally to interpretation of court rules. *Grievance Administrator v Underwood*, 462 Mich 188, 193-194; 612 NW2d 116 (2000). Our primary task in construing a statute is to discern and give effect to the intent of the Legislature. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004). The words contained in a statute provide us with the most reliable evidence of the Legislature's intent. *Id.* at 549. In ascer-

---

[6] We do disagree with plaintiffs' argument that this Court lacks jurisdiction to address the issue because defendants never appealed the order granting summary disposition, nor the subsequent money judgment entered against NZA. Pursuant to MCR 7.203(A)(1), we have "jurisdiction of an appeal of right filed by an aggrieved party from . . . [a] final judgment or final order of the circuit court[.]" A final judgment or order in a civil case is defined as "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties[.]" MCR 7.202(6)(a)(i). Here, the summary disposition order at issue and the money judgment against NZA were not final orders or judgments because the circuit court subsequently entered the judgment holding Ziegelman personally liable for breach of the architectural agreement. The summary disposition order merely sent the case to arbitration, where it would be arbitrated and then returned to the circuit court for entry of a judgment on the arbitration award. "[A] party claiming an appeal of right from a final order is free to raise issues on appeal related to prior orders." *Shember v Univ of Michigan Med Ctr*, 280 Mich App 309, 315; 760 NW2d 699 (2008). Accordingly, we do have jurisdiction over the summary disposition issue.

taining legislative intent, this Court gives effect to every word, phrase, and clause in the statute. *Id.* We must consider both the plain meaning of the critical words or phrases, as well as their placement and purpose in the statutory scheme. *Id.* If the wording or language of a statute is unambiguous, the Legislature is deemed to have intended the meaning clearly expressed, and we must enforce the statute as written. *Id.* "A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp,* 466 Mich 57, 63; 642 NW2d 663 (2002).

MCR 2.621, which addresses proceedings supplementary to judgment, provides in pertinent part:

> (A) Relief Under These Rules. When a party to a civil action obtains a money judgment, that party may, by motion in that action or by a separate civil action:
>
> (1) obtain the relief formerly obtainable by a creditor's bill;
>
> (2) obtain relief supplementary to judgment under MCL 600.6101–600.6143; and
>
> (3) obtain other relief in aid of execution authorized by statute or court rule.

MCR 2.621(A)(2) is the provision implicated in this case, and it directs attention to the PSJA. MCL 600.6104, which is the relevant statute here under the PSJA, provides:

> After judgment for money has been rendered in an action in any court of this state, the judge may, on motion in that action or in a subsequent proceeding:
>
> (1) Compel a discovery of any property or things in action belonging to a judgment debtor, and of any property, money, or things in action due to him, or held in trust for him;

(2) Prevent the transfer of any property, money, or things in action, or the payment or delivery thereof to the judgment debtor;

(3) Order the satisfaction of the judgment out of property, money, or other things in action, liquidated or unliquidated, not exempt from execution;

(4) Appoint a receiver of any property the judgment debtor has or may thereafter acquire; and

(5) Make any order as within his discretion seems appropriate in regard to carrying out the full intent and purpose of these provisions to subject any nonexempt assets of any judgment debtor to the satisfaction of any judgment against the judgment debtor.

The court may permit the proceedings under this chapter to be taken although execution may not issue and other proceedings may not be taken for the enforcement of the judgment. It is not necessary that execution be returned unsatisfied before proceedings under this chapter are commenced.

For purposes of the question posed to us, § 6104(5) is the only provision that could conceivably support the circuit court's ruling; however, on close examination of the language in § 6104(5), it is clear that it did not authorize the entry of the judgment against Ziegelman. MCL 600.6104(5) begins with very broad language, allowing the court, at its "discretion," to make "any order" that "seems appropriate." But these actions must relate to "carrying out the full intent and purpose of these provisions to subject any nonexempt assets of any *judgment debtor* to the satisfaction of any judgment against the *judgment debtor*." *Id.* (emphasis added). Ziegelman was not a judgment debtor in regard to breach of the architectural agreement; the judgment debtor was solely NZA. The circuit court essentially used a proceeding *supplementary to judgment* to enter an additional judgment against a party not previously

subject to a judgment on the claim at issue. MCR 2.621 and the PSJA do not provide any authority for such a ruling in the context of piercing the corporate veil. And we emphasize that this case does not involve allegations of an unlawful transfer of property from NZA to Ziegelman in avoidance of attempts to collect on the judgment, nor allegations that Ziegelman possessed assets legally belonging to NZA. See MCL 600.6110, 600.6116, 600.6119, 600.6122, and 600.6134.

Our sister state of Illinois, under its rules and procedures, has similarly rejected efforts to hold a third party liable under a corporate veil piercing theory in the course of proceedings supplementary to judgment, ruling that it is improper to do so. *Miner v Fashion Enterprises, Inc*, 342 Ill App 3d 405, 415; 794 NE2d 902 (2003) (nothing in the code of civil procedure authorizes a judge to adjudicate the merits of corporate veil allegations in supplementary proceedings); *Pyshos v Heart-Land Dev Co*, 258 Ill App 3d 618, 624; 630 NE2d 1054 (1994) ("[A] party who has secured a judgment against a corporation may not seek to pierce the corporate veil in supplementary proceedings."). The Georgia Supreme Court has ruled in comparable fashion. *C-Staff, Inc v Liberty Mut Ins Co*, 275 Ga 624, 626; 571 SE2d 383 (2002) (the general assembly has established certain statutory proceedings to enforce judgments and "holding liable persons who were not parties to [a] judgment are not among them"). Here, neither MCR 2.621 nor the PSJA gave the circuit court authority to pierce NZA's corporate veil and to hold Ziegelman, NZA's sole shareholder, personally liable. Accordingly, the judgment against Ziegelman, which was for breach of the architectural agreement and predicated on the piercing of the corporate veil, is vacated.

In light of our ruling, it is unnecessary to address the remaining issues presented on appeal. We do note that

in *Miner, supra* at 415, the Illinois Appellate Court ruled that "a judgment creditor may choose to file a new action to pierce the corporate veil of a judgment debtor in order to hold individual shareholders and directors liable for a judgment against the corporation." We will not answer the questions whether plaintiffs are legally entitled to file a new and separate action against Ziegelman, outside the PSJA, under a corporate veil piercing theory and whether res judicata or the compulsory joinder rule, MCR 2.203, would bar such an action. Given that this event has not occurred, and perhaps may never take place, and that, even if such a lawsuit had been filed, it would fall outside this particular panel's jurisdiction at the present time, it would be improper and inappropriate to render any ruling on these speculative questions. See *Michigan Chiropractic Council v Comm'r of the Office of Financial & Ins Services*, 475 Mich 363, 371 n 14; 716 NW2d 561 (2006) (doctrine of ripeness precludes the adjudication of contingent or hypothetical claims before an actual injury has been sustained; a matter is not ripe for judicial consideration if it rests on contingent future events that may not occur as anticipated or may not occur at all).[7]

---

[7] While defendants raise res judicata and compulsory joinder arguments, they are necessarily made in the context of implicitly treating plaintiffs' motion to pierce the corporate veil and the circuit court's ruling granting the motion as if they were part of a second lawsuit. However, the motion and the court's ruling were made under MCR 2.621 and the PSJA, and not in the context of a lawsuit independent of those provisions. Because the court rule and the PSJA did not authorize the court's ruling, no more analysis is currently required. We recognize that both MCR 2.621(A) and the PSJA, specifically MCL 600.6104, allow a separate and subsequent action to collect on a judgment in regard to a judgment debtor, but, for the reasons stated above, a separate action *under these provisions* could not reach Ziegelman personally, because he was not a judgment debtor with regard to the initial judgment. The question whether an action, independent of the PSJA, can be used to hold Ziegelman personally liable for breach of the architectural agreement under a corporate veil piercing theory is a question for another day and another court.

The judgment at issue is vacated. Defendants, having fully prevailed on appeal, are awarded costs under MCR 7.219.