## LOGAN v MANPOWER OF LANSING, INC

Docket No. 311167. Submitted March 5, 2014, at Lansing. Decided
March 13, 2014, at 9:00 a.m.

Janice Logan sought unemployment benefits from her former employer, Manpower of Lansing, Inc. Manpower is a temporary-staffing agency that provides workers to its clients. Manpower assigned Logan to work as a receptionist at Pennfield Animal Hospital. Logan went on medical leave in August 2008. She returned to work at Pennfield in October 2008 as a direct hire of Pennfield. At that time, Logan had a medical restriction in place that limited her to working no more than four hours a day for no more than three days a week. The medical restriction was lifted on January 3, 2009, but Logan continued to work part-time until she was laid off from Pennfield at the end of January 2009. The Unemployment Insurance Agency initially granted benefits to claimant. Manpower objected and an administrative law judge (ALJ) ruled that Logan did not qualify for benefits because she had not left Manpower to accept permanent, full-time work. The Michigan Employment Security Board of Review remanded the matter to the ALJ for further fact-finding. On remand, the ALJ conducted further fact-finding and again ruled that Logan did not qualify for benefits. The Michigan Compensation Appellate Commission (formerly the Michigan Employment Security Board of Review) affirmed the decision of the ALJ, and Logan appealed in the Calhoun Circuit Court. The circuit court affirmed. The Court of Appeals granted Logan's application for leave to appeal.

The Court of Appeals *held*:

Under MCL 421.29(1)(a), an individual is disqualified from receiving benefits if he or she left work voluntarily without good cause attributable to the employer or employing unit. Under MCL 421.29(5), however, if the individual left work to accept permanent, full-time work with another employer, § 29(1)(a) is inapplicable. One who voluntarily leaves work to accept only part-time employment cannot invoke the exception to disqualification provided in § 29(5). In the context of § 29(1)(a), the term "work" is synonymous with "employment," and the work at issue is that associated with a particular employer or employing unit. Contrary

to Logan's argument, an individual does not have to have been unemployed under MCL 421.48(1) in order to be disqualified from receiving benefits under § 29(1)(a). In this case, the circuit court did not misapprehend or grossly misapply the substantial-evidence test to the ALJ's findings concerning whether claimant accepted part-time employment with Pennfield given the evidence that Pennfield's owner did not recall offering her full-time employment and given that Logan checked a box on a form that she filled out at Pennfield after she was hired in October 2008 indicating that she would be working part-time. Logan's other argument—that Manpower and Pennfield should have been considered dual or joint employers such that she could not be said to have left Manpower when she began working directly for Pennfield—was also correctly rejected. Although the Michigan Employment Security Act, MCL 421.1 *et seq.*, recognizes the existence of temporary-staffing firms, there is no statutory language suggesting that such firms and their clients are to be treated as a single employing unit. The circuit court did not err by affirming the determination that Logan was disqualified from receiving unemployment benefits under § 29(1)(a) when she left Manpower and that she never requalified for benefits under MCL 421.29(3).

Affirmed.

UNEMPLOYMENT COMPENSATION — DISQUALIFICATION — VOLUNTARILY LEAVING WORK — TEMPORARY-STAFFING FIRMS.

Under MCL 421.29(1)(a), an individual is disqualified from receiving unemployment benefits if he or she left work voluntarily without good cause attributable to the employer or employing unit; under MCL 421.29(5), however, if the individual left work to accept permanent, full-time work with another employer, § 29(1)(a) is inapplicable; one who voluntarily leaves work to accept only part-time employment cannot invoke the exception to disqualification provided in § 29(5); in the context of § 29(1)(a), the term "work" is synonymous with "employment," and the work at issue is that associated with a particular employer or employing unit; temporary-staffing firms and their clients are not generally treated as a single employing unit under the Michigan Employment Security Act.

Michigan Unemployment Insurance Project (by *Steve Gray*) for Janice Logan.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Matthew Schneider*, Chief Legal

Counsel, and *Peter T. Kotula*, Assistant Attorney General, for the Department of Licensing and Regulatory Affairs, Unemployment Insurance Agency.

Before: DONOFRIO, P.J., and SAAD and METER, JJ.

PER CURIAM. Claimant, Janice Logan, appeals by leave granted an order of the circuit court, disqualifying her from receiving unemployment benefits. Because claimant voluntarily left work in October 2008 without good cause attributable to her employer at the time, she was disqualified from receiving unemployment benefits under MCL 421.29(1)(a), and we affirm.

## I. BACKGROUND

Manpower of Lansing, Inc., is a temporary-staffing agency that provides workers to its clients. Claimant began working for Manpower in April 2008 and was assigned to work part-time as a receptionist at Pennfield Animal Hospital where she also provided general office support. At the beginning of August 2008, claimant went on medical leave. Up until that point, Manpower had paid claimant's salary. When claimant was ready to return to work in October 2008, she began working for Pennfield as a direct hire. Upon returning to work, claimant had a medical restriction in place, which limited her to working no more than four hours per day for no more than three days per week. After January 3, 2009, those medical restrictions were removed. But claimant never worked anything close to full-time employment, working only 15.5, 5.0, and 8.0 hours, respectively, during her last three two-week pay periods at Pennfield. Claimant was laid off at the end of January 2009.

Claimant applied for unemployment benefits. The Unemployment Insurance Agency initially granted ben-

efits to claimant, finding that she was not disqualified under § 29(1)(a) of the Michigan Employment Security Act (MESA), MCL 421.1 *et seq.* Manpower protested the agency's determination, and after holding a hearing, an administrative law judge (ALJ) ruled that claimant was disqualified for benefits under MCL 421.29(1)(a) because she "did not leave Manpower in order to accept permanent full-time work with Pennfield"; instead, "she abandoned her job with Manpower and took a part-time job with the client company."

Claimant appealed the ALJ's decision to the Michigan Employment Security Board of Review. The board initially found that the ALJ properly applied the law and affirmed the decision. Claimant then requested a rehearing because she asserted that she did not leave Manpower to accept part-time work with Pennfield; instead, she claimed that she left Manpower to accept full-time work. She further asserted that she "in fact work[ed] fulltime for a period after she went back to work at the animal hospital." Claimant acknowledged that the record was not developed on this matter and requested a rehearing to fully develop the record. Alternatively, claimant posited that even if she had left Manpower to accept part-time work with Pennfield, such circumstances would be covered by the intent of § 29(5) of the MESA. The board granted the request for rehearing and remanded the case to the ALJ in order to determine whether Pennfield offered claimant "full-time, permanent employment," which would have implicated the exception in MCL 421.29(5) to the rule in MCL 421.29(1) that disqualifies a person from receiving benefits for voluntarily leaving work.

On remand, the ALJ heard testimony from Mark Atma, the owner of Pennfield. Atma testified that claimant worked for him for approximately three

months, from the end of October 2008 through the end of January 2009. Atma testified that "[claimant] was working part-time" for him during this period. Atma further noted that on claimant's "new employee information sheet," claimant had selected the box indicating that she would be working "part-time." Atma also noted that in January 2009, after claimant's medical restrictions were removed, claimant never worked full-time. The ALJ found that claimant quit her job with Manpower in order to accept permanent, *part-time* employment with Pennfield and, as such, the provisions of MCL 421.29(5) did not apply. Therefore, the ALJ concluded that claimant was disqualified from receiving unemployment benefits under MCL 421.29(1)(a).

The Michigan Compensation Appellate Commission[1] affirmed the ALJ's decision, and claimant appealed in the Calhoun Circuit Court. Claimant reiterated her previous arguments but also argued that Manpower and Pennfield should be considered "joint employers" since she performed the same work before and after her direct hire with Pennfield and, thus, could not have "left" her prior employment. The circuit court was not persuaded and affirmed claimant's status as being disqualified from receiving unemployment benefits.

## II. STANDARD OF REVIEW

When reviewing a circuit court's review of an agency's decision, we must determine whether the circuit court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial-evidence test to the agency's factual findings. *Becker-Witt v Bd of Examiners of Social Workers*, 256 Mich App

---

[1] By executive order, the Michigan Employment Security Board of Review was replaced with the Michigan Compensation Appellate Commission on August 1, 2011. Executive Order No. 2011-6.

359, 361-362; 663 NW2d 514 (2003). "This latter standard is indistinguishable from the clearly erroneous standard of review that has been widely adopted in Michigan jurisprudence. As defined in numerous other contexts, a finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Boyd v Civil Serv Comm*, 220 Mich App 226, 234-235; 559 NW2d 342 (1996).

However, we review questions of statutory interpretation de novo. *Adams v West Ottawa Pub Sch*, 277 Mich App 461, 465; 746 NW2d 113 (2008). The primary goal when interpreting a statute is to ascertain and give effect to the Legislature's intent. *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217-218; 801 NW2d 35 (2011). "The words contained in a statute provide us with the most reliable evidence of the Legislature's intent." *Green v Ziegelman*, 282 Mich App 292, 301; 767 NW2d 660 (2009). In interpreting a statute, this Court considers "both the plain meaning of the critical words or phrases, as well as their placement and purpose in the statutory scheme." *Id.* at 302.

### III. ANALYSIS

On appeal, claimant argues that she should not be disqualified from receiving unemployment benefits because, under MCL 421.29(1)(a), she did not "le[ave] work voluntarily" when she left Manpower to start working for Pennfield.

MCL 421.29 provides, in pertinent part, the following:

(1) Except as provided in subsection (5), an individual is disqualified from receiving benefits if he or she:

(a) Left work voluntarily without good cause attributable to the employer or employing unit. An individual who

left work is presumed to have left work voluntarily without good cause attributable to the employer or employing unit. . . . An individual claiming benefits under this act has the burden of proof to establish that he or she left work involuntarily or for good cause that was attributable to the employer or employing unit. . . .

\* \* \*

(5) If an individual leaves work to accept permanent full-time work with another employer . . . , all of the following apply:

(a) Subsection (1) does not apply.

At issue is the effect of claimant stopping to work for Manpower and starting to work for Pennfield in October 2008.[2] Claimant first argues that because her "work" did not change when she started working for Pennfield, she had not "left work" under the plain language of the statute. While "work" is not defined in the statute, from its context in MCL 421.29(1)(a), it is easily understood as being synonymous with "employment." The Legislature's intent is ascertained when viewing the phrase in its entirety: "Left work voluntarily without good cause attributable to the employer or employing unit." *Id.* The phrase as a whole demonstrates that "work" is associated with "*the* employer or employing unit." The use of a definite article indicates that the Legislature was referring to a particular employer and not just any general employer. See *Barrow v Detroit Election Comm*, 301 Mich App 404, 414; 836 NW2d 498 (2013) (noting that the definite article "the"

---

[2] We note that even though claimant was seeking unemployment benefits in relation to her layoff in January 2009, whether she left work voluntarily in October 2008 was still relevant because if she was disqualified from receiving benefits when she left Manpower, she would remain disqualified until she requalified under MCL 421.29(3). MCL 421.29(2).

denotes a particular item instead of a general item). Thus, it is clear that the statute does not refer to work that is unconnected to an employer; instead, the work is linked to a particular employer or employing unit, and · when the relationship with that particular employer or employing unit ends, the work at issue necessarily also ends.

Therefore, with this understanding of the statute, it is clear that the circuit court applied the correct legal principles. The circuit court properly ruled that, pursuant to MCL 421.29(1)(a), one who voluntarily leaves work without good cause attributable to his or her prior employer, is disqualified from receiving unemployment benefits. The circuit court also properly noted that one who voluntarily leaves work to accept part-time employment cannot invoke the exception provided in MCL 421.29(5).

Furthermore, the circuit court did not misapprehend or grossly misapply the substantial-evidence test to the agency's factual findings related to whether claimant accepted part-time employment instead of full-time employment with Pennfield. " 'Substantial evidence' is evidence that a reasonable person would accept as sufficient to support a conclusion." *Dowerk v Oxford Charter Twp*, 233 Mich App 62, 72; 592 NW2d 724 (1998). "While this requires more than a scintilla of evidence, it may be substantially less than a preponderance." *Id*. In this case, the circuit court correctly noted that "there is evidence to support the conclusion that the claimant left her position to assume part-time employment." Such evidence included Atma's testimony that he did not recall ever offering full-time employment to claimant and the fact that claimant checked a box on her new-employee form with Pennfield indicating that she would be working part-time. In

short, we are not left with a definite and firm conviction that a mistake was made in this matter.

We note that claimant's reliance on the fact that she was never "unemployed" under § 48(1) of the MESA, MCL 421.48(1), is misplaced. The disqualification under § 29(1)(a) does not require an individual to have been "unemployed" in order to be disqualified from receiving benefits. Instead, the person merely has to have left work voluntarily without good cause attributable to the employer or employing unit. Claimant also avers that her starting to work for Pennfield should not be construed as voluntarily leaving Manpower. However, this argument is facially without merit as there is no dispute that claimant voluntarily ended her employer-employee relationship with Manpower. As our Supreme Court suggested in *Thomas v Employment Security Comm*, 356 Mich 665, 669; 97 NW2d 784 (1959), an employee voluntarily leaves his or her job if the separation is the product of the employee's "hopes, wishes, and intent" to quit. The record here is clear that it was claimant's hope, wish, and intent to quit working for Manpower, which she effectuated when she voluntarily ended her employee-employer relationship with Manpower in October 2008 and began her employment with Pennfield.

Claimant also argues that Pennfield and Manpower should have been considered "dual" or "joint" employers. Claimant relies on the MESA's definition of "employing unit":

> "Employing unit" means any individual or type of organization, . . . which has or subsequent to this amendatory act, had in its employ 1 or more individuals performing services for it within this state. All individuals performing services within this state for any employing unit which maintains 2 or more separate establishments within this state shall be considered to be employed by a single

> employing unit for all the purposes of this act. Each individual employed to perform or to assist in performing the work of any *agent or employee of an employing unit* shall be considered to be employed by that employing unit for all the purposes of this act, whether the individual was hired or paid directly by that employing unit or by the agent or employee, provided the employing unit had actual or constructive knowledge of the work. [MCL 421.40 (emphasis added).]

Claimant's reliance on this statute is misplaced. As claimant recognizes in her brief on appeal, part of the purpose of this definition is to prevent employers from using agents to hire individuals to perform work and then deny that those individuals were actually employed by those employers. However, claimant fails to explain how Manpower was an agent (or employee) of Pennfield or vice versa. All claimant relies on is that Pennfield and Manpower had "mutual knowledge" that claimant was performing services for Pennfield. This fact is inadequate to establish an agency relationship. An agency is defined as " 'a fiduciary relationship created by express or implied contract or by law, in which one party (the agent) may act on behalf of another party (the principal) and bind that other party by words or actions.' " *Breighner v Mich High Sch Athletic Ass'n*, 255 Mich App 567, 582-583; 662 NW2d 413 (2003), quoting *Black's Law Dictionary* (7th ed). There is no evidence that Manpower had any authority whatsoever to bind Pennfield. Moreover, the MESA recognizes the existence of temporary-staffing firms, like Manpower, and defines them as "an employer whose primary business is to provide a client with the temporary services of 1 or more individuals under contract with the employer . . . ." MCL 421.29(1)(*l*). Thus, the MESA, itself, identifies the different parties involved in this situation: (1) the individual is the

"employee," (2) the temporary-staffing firm is the "employer," and (3) the direct beneficiary of the employee's work is the "client," not an "employer." Nowhere in the MESA does it suggest an agency relationship between the employer and the client. If the Legislature had desired to classify the temporary-staffing provider and the client as a single "employing unit," it could have done so. Thus, without any factual basis to support the existence of an agency relationship and without any statutory language to support claimant's view, we decline claimant's invitation to view a temporary-staffing firm and its client as "joint employers" or a single "employing unit."

Therefore, we conclude that the circuit court applied the correct legal principles and correctly applied the substantial-evidence test to the agency's factual findings. Accordingly, it did not err by affirming the agency's determination that claimant was disqualified under MCL 421.29(1)(a) from receiving unemployment benefits because she voluntarily left work without good cause attributable to the employer and she never requalified pursuant to MCL 421.29(3).

Affirmed.

DONOFRIO, P.J., and SAAD and METER, JJ., concurred.