# STATE OF MICHIGAN

# COURT OF APPEALS

JIM HAYNES,

      Claimant-Appellee,

v

COLLABERA, INC.,

      Appellee,

and

UNEMPLOYMENT INSURANCE AGENCY,

      Appellant.

UNPUBLISHED
February 8, 2018

No. 336372
Ingham Circuit Court
LC No. 16-000508-AE

Before: RONAYNE KRAUSE, P.J., and FORT HOOD and O'BRIEN, JJ.

PER CURIAM.

Appellant appeals by leave granted the decision of the circuit court reversing the decision of the Michigan Compensation Appellate Commission (MCAC) denying claimant-appellee's unemployment benefits. We reverse and remand for entry of an order affirming the MCAC's decision.

This case arises out claimant's voluntary resignation from his employment with Collabera, Inc. Collabera is a staffing company and subcontractor for IBM, which had a contract with the State of Michigan. Claimant was employed by Collabera as a computer programmer for the State of Michigan from January 21, 2014, until February 12, 2015. In order to finalize his employment, claimant signed an employment contract, which included his starting hourly wage. After about six months, claimant's hourly pay was increased.

In October 2014, claimant met with an IBM representative, who indicated that the State of Michigan was very satisfied with claimant's performance and that IBM would be extending claimant's contract. The representative indicated that this extension may include a "rate bump," but indicated that he could "only request it . . . [he could] not promise that IBM procurement [would] approve it."

On December 4, 2014, claimant e-mailed an IBM representative regarding rumors that another of IBM's subcontracting companies was cutting its employees' wage rates. Claimant received a response back in which the representative touched on the possibility of claimant's raise. In the e-mail, the IBM representative indicated that his "plan for a rate increase was to try

-1-

it in about six weeks" after he was able to verify an "increase in revenue to offset the increased cost." The representative also informed claimant that he had taken a new position at IBM, so claimant had a new representative. Claimant was provided with his new representative's contact information.

On December 12, 2014, claimant contacted Collabera to inquire about the status of his contract extension. On December 17, 2014, Collabera responded via e-mail and stated that it would keep claimant posted with updates regarding his concern. On that same day, the new IBM representative e-mailed claimant and Collabera, stating that IBM was waiting for the State to complete work on their side to submit the purchase order, which would secure funds for claimant's contract.

On December 30, 2014, claimant received an e-mail from Collabera that offered claimant a contract extension through December 31, 2015. However, the e-mail was silent on claimant's rate increase. Claimant responded to Collabera's e-mail by saying, "Do NOT consider this my acceptance at this point. I will decide when the final updates that you referred to before I make my decision."

On January 6, 2015, claimant wrote to IBM asking for an update on his status for the project extension. In response, claimant's representative from IBM stated that claimant's work was extended through December 30, 2015. He also stated that he had discussed with claimant's previous representative that the previous representative "had wanted to provide an incremental increase to [claimant's] rate, which [the new representative] agreed with." The representative went on to state, "I'm not sure how quickly that gets initiated once the contract is extended, but as far as I am aware, that is in the works as well."

On February 3, 2015, claimant tendered a letter of resignation to Collabera. The letter stated as follows:

> After reflecting over the events of the past year, I feel as though it is in my best interest to resign. Too many events that I cannot and will not overlook any longer have occurred. I plan on 2/13/2015 being my last day of employment. I will not inform the client (per past conversations). Please refrain from contacting me concerning this decision because it is final.

On February 5, 2015, Collabera requested that claimant reconsider his decision to resign because it was working on resolving the problems. The parties continued to communicate via telephone to try to work out a resolution before claimant's last day. However, the parties were apparently unable to come to a resolution, and plaintiff's last day was February 12, 2015.

After claimant left Collabera's employment, he filed a claim for unemployment benefits. Appellant denied the claim under the voluntary quit provision of the Employment Security Act, MCL 421.29(1)(a). Appellant determined that claimant quit his job voluntarily and, therefore, was not entitled to unemployment benefits. Claimant requested a redetermination, and appellant affirmed its decision. Appellant concluded that "[n]o new or additional evidence [had] been provided to warrant a reversal in the prior determination," and, as such, continued to find that claimant's "leaving was voluntary and not attributable to the employer."

Claimant subsequently requested a hearing, and on August 25, 2015, a telephone hearing was held before an Administrative Law Judge (ALJ). A human resources (HR) administrator for Collabera testified that he only had records of promised raises that were put into writing, and that he would have no way of knowing if any oral offers had been made to claimant. He also testified that, before Collabera could have moved forward with claimant's raise, it first needed a new purchase order from their client. The HR administrator stated that the purchase order was finalized on February 7, 2015, but claimant had already tendered his resignation by then. Claimant testified that he had never received notice of the new terms or new contract before his last day of employment.

After the hearing concluded, the ALJ issued a decision that reversed appellant's decision. The ALJ found that claimant had good cause to quit his job based on the denial of the raise he had bargained for. In his decision, the ALJ stated that claimant was denied a promised raise and, therefore, had good cause to quit. The ALJ further concluded that a reasonable person would quit under those circumstances, so claimant was not disqualified from receiving unemployment compensation.

Appellant appealed the ALJ's decision to the MCAC, and the MCAC reversed. The MCAC determined that claimant failed to show that he voluntarily quit his job for good cause attributable to Collabera because claimant's raise was not a promise, but rather "only a possibility that he discussed with his managers." The MCAC also stated:

> In the instant matter, the claimant admitted that he quit his employment with the employer. He testified that he did so because he was dissatisfied that the employer did not implement a pay increase as part of his work contract extension and he was displeased that the employer had failed to provide him with a written version of his contract extension. The contract extension was sent to the claimant from the employer through an email. He acknowledged that as a result of the contract extension, continuing work was available, and the pay increase was only a possibility that he discussed with his managers. Additionally, he understood that even if the employer determined he should receive a pay raise, it was contingent on a contract that the employer had with another employer.

> Based on the foregoing, we find that claimant did not meet his burden of proving he left his employment for good cause attributable to the employer. A reasonable employee would not have quit under the circumstances presented here.

Claimant appealed to the circuit court. On December 13, 2016, the circuit court issued an opinion and order reversing the MCAC's decision. The circuit court concluded that Collabera's failure to give claimant a "promised" raise gave him good cause to quit. The circuit court stated as follows:

> The [MCAC] determined that a reasonable man would have known that Collabera's discussion regarding a raise were discussions regarding a possibility, rather than a promise, and that a reasonable man would not have left his employment under these circumstances where [claimant's] rate of pay was uncertain. This Court disagrees. The substantial evidence on the record shows

that both [IBM] and [Collabera] approved [claimant's] raise, and subsequently, Collabera failed to follow through and put that approval in writing. The [MCAC's] determination that the promise of a raise was a mere possibility is undercut by the fact that the raise was finalized and approved on February 7, 2015, and but for Collabera's failure to communicate that approval to [claimant], [claimant] would not have left his employment. A reasonable man, facing uncertainty as to his rate of pay and an employer that repeatedly said a pay increase would be approved but failed to follow through on its own statements, would have ended his employment.

On appeal, appellant argues that the circuit court erred by reversing the MCAC's decision because that decision was in accordance with the law and supported by substantial evidence. We agree. As stated by the Michigan Supreme Court,

[A] circuit court must affirm a decision of the ALJ and the MCAC if it conforms to the law, and if competent, material, and substantial evidence supports it. A reviewing court is not at liberty to substitute its own judgment for a decision of the MCAC that is supported with substantial evidence. The Court of Appeals then reviews a circuit court's decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings . . . . [*Hodge v US Security Assoc, Inc*, 497 Mich 189, 193-194; 859 NW2d 683 (2015) (footnotes omitted; alteration in original).]

Substantial evidence "is evidence that a reasonable person would accept as sufficient to support a conclusion." *Logan v Manpower of Lansing, Inc*, 304 Mich App 550, 557; 847 NW2d 679 (2014) (quotation marks and citation omitted). "While this requires more than a scintilla of evidence, it may be substantially less than a preponderance." *Id.* (quotation marks and citation omitted). In addition, "it is not a reviewing court's function to resolve conflicts in the evidence or to pass on the credibility of witnesses." *Vanzandt v State Employees Ret Sys*, 266 Mich App 579, 593; 701 NW2d 214 (2005). Deference must be afforded to an agency's findings of fact, especially when made on the basis of credibility determinations or conflicting evidence. *Dep't of Community Health v Anderson*, 299 Mich App 591, 598; 830 NW2d 814 (2013). Finally, a reviewing court "may not set aside findings merely because alternative findings also could have been supported by substantial evidence on the record." *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 341; 810 NW2d 621 (2011).

The Michigan Employment Security Act (MESA), MCL 421.1 *et seq.*, serves a remedial purpose by providing benefits to persons who are involuntarily unemployed. *Korzowski v Pollack Indus*, 213 Mich App 223, 228-229; 539 NW2d 741 (1995). Although MESA is to be construed liberally, disqualification provisions are to be construed narrowly. *Id.* at 229. MCL 421.29(1)(a) states that "an individual is disqualified from receiving benefits if he or she"

[l]eft work voluntarily without good cause attributable to the employer or employing unit. An individual who left work is presumed to have left work voluntarily without good cause attributable to the employer or employing unit. . . . An individual claiming benefits under this act has the burden of proof to establish

-4-

that he or she left work involuntarily or for good cause that was attributable to the employer or employing unit. . . .

Good cause exists "where an employer's actions would cause a reasonable, average, and otherwise qualified worker to give up his or her employment." *McArthur v Borman's, Inc*, 200 Mich App 686, 693; 505 NW2d 32 (1993) (quotation marks and citation omitted). "A good personal reason does not equate with good cause under the statute." *Id.*

In this case, the circuit court misapplied the substantial evidence test. In its written opinion, the circuit court stated, "The substantial evidence on the record shows that both [IBM] and [Collabera] approved [claimant's] raise, and subsequently, Collabera failed to follow through and put that approval in writing." However, the circuit court was tasked with determining whether substantial evidence supported the MCAC's decision. *Hodge*, 497 Mich at 193-194. The MCAC never found that Collabera approved claimants raise and then failed to follow through with it. Rather, the MCAC found that Collabera told claimant that his raise was a possibility contingent on a contract with another employer, and when claimant did not receive the raise as quickly as he desired, he voluntarily left. It appears that instead of determining whether substantial evidence supported the MCAC's factual findings, the circuit court "set aside [the MCAC's] findings merely because alternative findings also could have been supported by substantial evidence on the record." *Edw C Levy Co*, 293 Mich App at 341.

It appears that the circuit court reweighed the evidence due to "the fact that the raise was finalized and approved on February 7, 2015, and but for Collabera's failure to communicate that approval to [claimant], [claimant] would not have left his employment." This evidence, which the circuit court appeared to emphasize, was before the MCAC, and the MCAC apparently did not find that this evidence conflicted with its conclusion.[1] And even if this evidence did conflict with the MCAC's factual findings, deference was to be given to the MCAC's determination of conflicting evidence. See *Anderson*, 299 Mich App at 598. Again, the circuit court was not permitted to "set aside findings merely because alternative findings also could have been supported by substantial evidence on the record." *Edw C Levy Co*, 293 Mich App at 341. By failing to address whether substantial evidence supported the MCAC's factual findings, and instead *only* addressing whether substantial evidence supported a contrary conclusion, the circuit court misapplied or misapprehended the substantial evidence test. *Hodge*, 497 Mich at 194.[2]

---

[1] Indeed, the fact cited by the circuit court does not necessarily support the circuit court's ultimate conclusion; that Collabera could have communicated the finalized contract to claimant does not support that Collabera previously promised claimant a raise. It could even be argued that the circuit court's reasoning supports that the "promised" raise was contingent on Collabera first securing the contract, which would support the MCAC's factual finding that claimant's raise was a "possibility" contingent on the contract being renewed.

[2] It also appears that the circuit court misstated the MCAC's factual findings. In its opinion, the circuit court stated that the MCAC's determination was based, in part, on the fact that "[claimant's] rate of pay was uncertain." It subsequently adopted this fact in its reasoning for why it was reasonable for claimant to leave. However, the MCAC only found that claimant's

Based on our review of the record, had the circuit court properly applied the substantial evidence test, it would have found that ample evidence supported the MCAC's conclusion. In the e-mails between claimant, IBM's representatives, and Collabera's representative, there was no "promise" of a raise for claimant. To the contrary, the e-mail exchanges support the MCAC's conclusion: claimant was told that a raise was a possibility, but there was no affirmative statement that claimant would, in fact, receive a raise. The closest that any written communication came to confirming a raise for claimant was the January 6, 2015 e-mail from an IBM representative, but even that e-mail did not include a "promise." Rather, the representative stated that claimant would receive a raise "once the contract [was] extended," which supports the MCAC's conclusion that claimant's raise was a "possibility" contingent on claimant's contract extension. After reviewing the record, we conclude that there is evidence that "a reasonable person would accept as sufficient to support [the MCAC's] conclusion." *Logan*, 304 Mich App at 557. Therefore, substantial evidence supported the MCAC's factual findings.

On appeal, claimant points to evidence on the record that tends to support the circuit court's conclusion. However, claimant does not adequately explain why substantial evidence did not support the MCAC's factual findings. Instead, claimant points to conflicting evidence that tends to support the circuit court's findings. It was not the function of the circuit court, nor is it this Court's function, "to resolve conflicts in the evidence." *Vanzandt*, 266 Mich App at 593. As previously stated, the circuit court's function was to determine whether substantial evidence supported the MCAC's factual findings, not to determine whether other evidence supported an alternative conclusion.

Based on the MCAC's factual findings, which are supported by substantial evidence, we conclude that the agency properly applied the law by denying claimant unemployment benefits. It is undisputed that claimant left work voluntarily, so the question is whether claimant left for good cause. *McArthur*, 200 Mich App at 690. On the facts of this case, we do not find that claimant has established good cause. Claimant was aware that he had continuing work under a renewed contract, but he wished for a pay increase as part of that renewed contract. Claimant was told on January 6, 2015, by a representative at IBM that claimant's raise was "in the works" and contingent on his contract being extended, but the representative also told claimant that he was uncertain of when the increase would occur. Rather than waiting on the contract's approval, or even inquiring as to a date that he could expect the increase, claimant tendered his letter of resignation on February 2, 2015. Thus, claimant waited for less than one month from when he was told that his rate increase was "in the works" before resigning. Under these circumstances, a reasonable, average worker would not give up his employment.[3] *Id.* at 693. Accordingly, the MCAC properly concluded that claimant was not entitled to unemployment benefits.

---

*raise* was uncertain. Claimant's "rate of pay" was never uncertain; he was paid at the rate of his old contract until his contract extension and rate increase were approved.

[3] The increase that claimant sought was slightly over 7%, and claimant's hourly rate at the time of his resignation was over $65 per hour.

Claimant attempts to analogize this case to this Court's decision in *Degi v Varano Glass Co*, 158 Mich App 695, 698; 405 NW2d 129 (1987), and argue that the denial of a "promised raise" constitutes good cause warranting an employee's decision to quit. However, as discussed, the MCAC's conclusion that claimant was not promised a wage is supported by substantial evidence, so claimant's reliance on *Degi* is misplaced. Moreover, the decision in *Degi* was not based solely on the denial of the claimant's increased wage, but on the multitude of inequities that the claimant faced at the hands of his previous employer. These included the claimant's setting up of a new department, attempting to secure clients for the new department, and practicing "highly skilled talent and shar[ing] it with other employees" to assist in the development of the new department, all of which was done in reliance on the promise of a raise for working in the new department. *Degi*, 158 Mich App at 699. The employer eventually denied the claimant a raise, so the claimant requested to go back to his old department, which the employer also denied and told claimant that he had to continue to work in the new department, at which point the claimant left. *Id*. at 697, 699. This Court ultimately found that "[t]he employer's activity would motivate the average able-bodied and qualified worker to give up his or her employment in such a situation." *Id*. at 699. In contrast, claimant in this case left less than one month after being told that his requested raise was "in the works," and he provided no evidence that he took on additional work or performed any additional duties in expectation of his possible raise. Accordingly, we reject claimant's contention that *Degi* supports that claimant had "good cause" for voluntarily leaving his employment in this case.

Because the MCAC's decision was based on substantial evidence and not contrary to the law, the circuit court should have affirmed that decision rather than substituting its own judgment.

We reverse and remand to the circuit court to enter an order affirming the MCAC's decision. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Karen M. Fort Hood
/s/ Colleen A. O'Brien