779 F.2d 52
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
C. PAUL ROGERS, Plaintiff-Appellee,
v.
R. HOWARD WEBSTER, Defendant-Appellant.
 84-1096
 United States Court of Appeals, Sixth Circuit.
 10/22/85
 
 AFFIRMED
 E.D.Mich.
 On Appeal from the United States District Court for the Eastern District of Michigan, Southern Division
 BEFORE: ENGEL and KENNEDY, Circuit Judges; and NEESE, Senior (retired District) Judge.*
 PER CURIAM.
 
 
 1
 The appellant Mr. R. Howard Webster appeals from a post-judgment order of the District Court issued to assist the appellee Mr. C. Paul Rogers in satisfying a money judgment against Webster. Mr. Webster contends that the order (1) was not authorized by the law of Michigan, (2) violates international law, and (3) requires him to breach the laws of a foreign nation. We find no merit to the appeal and affirm the District Court.
 
 
 2
 Mr. Rogers, a citizen of Michigan, sued Mr. Webster, a citizen of Canada, in the District Court for wrongful termination of his employment as president of a Michigan corporation. See 28 U.S.C. Sec. 1332(a)(2). Judgment was entered against Mr. Webster for $1,000,000,** and Mr. Rogers sought to execute thereon. In aid of such execution, the District Court entered an order (1) restraining Mr. Webster preliminarily from disposing of his stock in two Canadian corporations, (2) directing him to deliver his stock certificates (and related documents) to the clerk of the District Court for eventual sale to satisfy the judgment, and (3) appointing a receiver of Mr. Webster's assets and directing him to deliver to the receiver all income or property he might thereafter possess, receive or control.
 
 
 3
 Initially, we note that Mr. Webster has disputed neither the District Court's jurisdiction of the subject-matter nor its jurisdiction of his person. That jurisdiction was not exhausted by the District Court's rendition of its judgment against Mr. Webster but continued until such time as the judgment might be satisfied. Wayman v. Southard, 23 U.S. (10 Wheat.) 1, 22, 6 L.Ed. 263 (1825).
 
 
 4
 The jurisdictional power of the District Court to render the judgment included the power to issue proper process to enforce it. Riggs v. Johnson County, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867). 'Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.' Id.
 
 
 5
 The procedures for execution on the judgment of a district court 'shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent it is applicable.' Fed. R. Civ. P. 69(a). This means that, in the absence of a controlling federal statute, the district court has the same authority to aid judgment creditors as that provided by local law to courts of the state in which the district court sits. Duchek v. Jacobi, 646 F.2d 415, 417 (9th Cir. 1981). The clear import of Rule 69(a) is to limit the execution remedies available to the district court 'to those generally provided by state law.' United States v. Yazell, 382 U.S. 341, 355, 86 S.Ct. 500, 508, 15 L.Ed.2d 404 (1966).
 
 
 6
 We disagree with Mr. Webster's position that the order of the District Court was not authorized by Michigan law; Michigan has given its courts extremely broad authorization to aid execution on their judgments, including ordering satisfaction out of liquidated or unliquidated property and the appointment of a receiver. See Mich. Comp. Laws Ann. Secs. 440.8317(2), 600.6104(3), (4), (5). Even though a court of Michigan may not directly affect title to property located outside the state, it may compel the defendant to do equity in relation to the property by exercising its in personam jurisdiction over him, and thereby affect title to such foreign property indirectly. Long v. Earle, 277 Mich. 505, 522-524, 269 N.W. 577 (1936); Emmons v. Emmons, 136 Mich. App. 157, 355 N.W.2d 898, 902 (1984).
 
 
 7
 Thus, where a Michigan court has acquired jurisdiction of a defendant's person, it may order him to do acts with respect to property located outside Michigan, id. (defendant ordered to convey title to Florida condominium), and even with respect to property located outside the United States, Carnahan v. Carnahan, 143 Mich. 390, 107 N.W. 73 (1906) (party ordered to deliver a specific fund on deposit in a Canadian financial institution); Schaheen v. Schaheen, 17 Mich. App. 147, 169 N.W.2d 117 (1969) (defendant ordered to convey title to real property in Beruit, Lebanon).
 
 
 8
 We reject also the appellant's contention that principles of international law precluded the District Court from exercising its in personam jurisdiction over him to affect property located in Canada. Subject to the interest of the state where the information is located, a court in the United States may order a person subject to its jurisdiction to produce documents, objects, or other information, even if the information or the person in possession of the information is outside the United States. Restatement of Foreign Relations Law of the United States (Revised) Sec. 437(a)(1) (Tent. Draft No. 6, 1985).
 
 
 9
 The fact that Mr. Webster's stock certificates and other items were situated outside the territorial reach of the District Court was immaterial, because that Court had jurisdiction of his person, and its order was directed at him, and not at the property itself. As was stated more than a century ago:
 
 
 10
 Where the necessary parties are before a court of equity, it is immaterial that the res of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal. It has the power to compel the defendant to do all things necessary, according to the lex loci rei sitae, which he could do voluntarily, to give full effect to the decree against him.
 
 
 11
 Without regard to the situation of the subject matter, such courts consider the equities between the parties, and decree in personam according to those equities, and enforce obedience to their decrees by process in personam.
 
 
 12
 Phelps v. McDonald, 99 U.S. (9 Otto) 298, 308, 25 L.Ed. 473 (1879).
 
 
 13
 '[I]f a judicial proceeding is begun with jurisdiction over the person of the party concerned, it is within the power of a [court] to bind him by every subsequent order in the cause,' and this is true 'whether the party remain within the jurisdiction or not.' Michigan Trust Co. v. Ferry, 228 U.S. 346, 353, 33 S.Ct. 550, 552, 57 L.Ed. 867 (1913). Since the District Court retained herein personal jurisdiction over Mr. Webster, it had the power clearly to order him to deliver his personal property to the clerk or receiver, 'whether the property be within or without the United States.' United States v. First National City Bank, 379 U.S. 378, 384, 85 S.Ct. 528, 531, 13 L.Ed.2d 365 (1965) (bank ordered to freeze accounts located outside the United States). Accord In re Feit & Drexler, Inc., 760 F.2d 406, 414-415 (2d Cir. 1985) (order requiring delivery of property located outside the court's jurisdiction, including Swiss bank accounts, to escrow agent); Inter-Regional Financial Group, Inc. v. Hashemi, 562 F.2d 152 (2d Cir. 1977), cert. denied, 434 U.S. 1046, 98 S.Ct. 892, 54 L.Ed.2d 798 (1978) (defendant ordered to deliver to clerk stock certificates located in other states and other countries); United States v. Ross, 302 F.2d 831 (2d Cir. 1962) (defendant ordered to deliver to receiver his shares in a wholly-owned Bahamian corporation); cf. Steele v. Bulova Watch Co., 344 U.S. 280, 289, 73 S.Ct. 252, 257, 97 L.Ed. 319 (1952) ('Where, as here, there can be no interference with the sovereignty of another nation, the District Court in exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction.') cf. New Jersey v. City of New York, 283 U.S. 473, 482, 51 S.Ct. 519, 521, 75 L.Ed. 1176 (1931) ('The situs of the acts creating the nuisance, whether within or without the United States, is of no importance. Plaintiff seeks a decree in personam to prevent them in the future.').
 
 
 14
 Although there is no doubt that, if a court has personal jurisdiction over a party, it has the power to order him to act in any fashion or in any place, various considerations may induce it to refrain from exercising this power in certain contexts. 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil Sec. 2945, at 402 (1973). When asked to exercise its in personam jurisdiction over one properly before it, the court must be mindful of any effect its decision might have in a foreign nation. It ordinarily should not exercise its jurisdiction if such would cause substantial interference with the sovereignty of another nation, see Steele v. Bulova Watch Co., supra, or if its decree would require one to 'violate foreign law' or would 'place [him] under risk of double liability,' United States v. First National City Bank, supra, 379 U.S. at 384, 85 S.Ct. at 532. See United States v. Ross, supra, 302 F.2d at 834 ('Of course no court should order the performance of an act in a foreign country when that act will violate the foreign country's laws.').
 
 
 15
 We fail to see how the order from which Mr. Webster has appealed poses any threat of significant interference with the sovereignty of Canada. Neither are we persuaded that Mr. Webster's compliance with the order would result in his violation of the penal laws of that nation or would subject him to civil or double liability. All the District Court ordered was that Mr. Webster deliver his stock certificates and other personal property to the clerk and receiver, respectively, and we are not aware of any provision of Canadian law that purports to proscribe mere delivery or which imposes any liability for so doing.
 
 
 16
 Mr. Webster's concern, that any judicially-ordered sale of his restricted shares would conflict with the sovereign right of Canada to regulate its closely-held corporations and the transfer of ownership interests therein, is a matter worthy of consideration. But, the District Court has not ordered the sale of Mr. Webster's stock, see 28 U.S.C. Sec. 2004, and therefore, any consideration by us of the propriety of such an order is premature.
 
 
 17
 Whether the District Court can (or should) order the sale of Mr. Webster's stock is a matter to be addressed in the first instance by that court once the shares are delivered. For the present, we are satisfied the District Court did not abuse the exercise of its jurisdiction over Mr. Webster merely by directing him to deliver his stock certificates to the clerk.
 
 
 18
 The District Court is AFFIRMED.
 
 
 
 *
 Honorable C. G. Neese, Senior Judge, of Nashville, Tennessee who retired as a United States District Judge for the Eastern District of Tennessee, sitting by designation and assignment
 
 
 **
 The judgment was affirmed on appeal in an unpublished per curiam. See Rogers v. Webster, 762 F.2d 1011 (6th Cir. 1985) (table)