NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0400n.06

Nos. 16-2378/16-2418

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| AVANT CAPITAL PARTNERS, LLC, | ) | **FILED** |
| | ) | Jul 10, 2017 |
| Plaintiff–Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | |
| STRATHMORE DEVELOPMENT COMPANY MICHIGAN, LLC, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant–Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TERRA HOLDINGS, LLC | ) | |
| | ) | |
| Interested Party–Appellant | ) | |
| | ) | |

BEFORE: BOGGS, CLAY, and SUTTON, Circuit Judges.

**BOGGS, Circuit Judge.** Plaintiff Avant secured a federal-court judgment in Connecticut against Defendant Strathmore, a wholly owned subsidiary of Interested Party Terra Holdings. When Strathmore didn't pay, Avant initiated post-judgment proceedings in Michigan to enforce its judgment against Strathmore and against Terra, to whom Avant alleged that various payments meant for Strathmore were being diverted. Crucially, Avant had never joined Terra as a party to its lawsuit against Strathmore (or to any other suit). Nevertheless, the district court granted post-judgment relief against Terra to help Avant collect its money judgment. Strathmore and Terra now appeal the district court's order in these consolidated cases.

Post-judgment proceedings lie at the fringe of federal-court jurisprudence. The states have procedures for enforcing judgments, and applicable federal rules generally defer to those procedures. In this case, Michigan's Proceedings Supplementary to Judgment Act allowed the district court discretion to grant Avant limited post-judgment relief against Terra even though Terra was not a party to the underlying litigation or to Avant's post-judgment lawsuit. The district court overstepped the bounds of that discretion only in paragraph two of its order, which "added [Terra] as a judgment-debtor to the Judgment [against Strathmore]" and made Terra "jointly and severally liable for all sums due and owing under the Judgment as if an original party to the Judgment"—relief that would require Avant first to bring a legal action against Terra. But Appellants have not shown error in any other portion of the district court's order, so we affirm that order in its entirety except as to paragraph two.

# I

## *Factual Background*

Scott Chappelle is the President of Strathmore Development Company Michigan, LLC (Strathmore). The sole member of Strathmore is its parent company, Terra Holdings, LLC (Terra), which Chappelle also formed and manages.

Chappelle is also the President of Bear Creek Management, Inc., a Michigan corporation, which is the managing member of two subsidiaries: Bear Creek Partners II, LLC, and Bear Creek Retail Partners II, LLC (collectively, the Bear Creek entities). The Bear Creek entities own and operate apartments and a retail shopping complex in Petoskey, Michigan. The Bear Creek entities, Strathmore, and Terra all maintain business addresses in East Lansing, Michigan.

In 2010, Chappelle, acting on behalf of Strathmore, hired Connecticut-based Avant to broker a refinancing deal for the Bear Creek entities. Strathmore and Avant entered into a two-

year exclusive-agency agreement under which Strathmore promised to pay Avant a fee equal to 0.75% of the principal on any loan amount achieved. Strathmore and the Bear Creek entities later obtained an $18,400,000 loan outside of their arrangement with Avant. Avant sued Strathmore and the Bear Creek entities for its $138,000 fee, and in April 2015, following arbitration in Avant's favor, Avant secured a judgment in the United States District Court for the District of Connecticut, against Strathmore only, in the amount of Avant's fee plus $31,243.20 in pre-arbitration interest.

Avant then registered that judgment in the United States District Court for the Western District of Michigan and requested various writs of execution from that court as Avant attempted, unsuccessfully, to collect its judgment debt from Strathmore. Chappelle reportedly told local media in Michigan that the debt would "never be paid."

In August 2015, Avant filed, and the district court granted, an ex parte motion for post-judgment discovery, pursuant to Federal Rule of Civil Procedure 69(a)(2), to examine Chappelle under oath and to compel him to produce records concerning Strathmore's property and income.

In May 2016, the Bear Creek entities filed a petition for Chapter 11 bankruptcy. In that bankruptcy proceeding, the Bear Creek entities filed a Schedule G, listing "executory contracts and unexpired leases," which included service agreements with Strathmore. Two agreements, one for the residential Bear Creek development and one for the retail development—each signed only by Chappelle as President of Strathmore and again by Chappelle as President of Bear Creek Management, Inc.—grant Strathmore a management fee of up to three percent of the gross revenues from the respective Bear Creek properties in exchange for various management and maintenance services to be performed by Strathmore. The agreements also empower Strathmore

to incur expenditures (to be reimbursed by the Bear Creek entities) for the purpose of managing and maintaining the properties.

The bankruptcy court issued an interim order on May 27, 2016, allowing the Bear Creek entities to use cash for certain expenses in the ordinary course of business, but prohibiting the entities from paying any "insiders" (certain affiliated persons or entities, as defined in 11 U.S.C. § 101(31)) *except* Strathmore, for which the bankruptcy court authorized payments "to the extent necessary in accordance with the [court-approved] Budget, without prejudice to any arguments that Strathmore is or is not an Insider." The bankruptcy court prohibited the Bear Creek entities from using any cash "except as permitted in this Interim Order or another order of the Court."

Nevertheless, the record before us contains evidence of checks paid by the Bear Creek entities to *Terra* (Strathmore's parent), rather than to Strathmore, totaling more than $250,000 during the period of June to August 2016 alone. Avant alleges that Strathmore's only two assets were the two Bear Creek management agreements, and that Chappelle, acting as President of the Bear Creek entities, intentionally diverted (from Strathmore to Terra) the only source of funds from which Strathmore would be able to pay Avant's judgment, with the result that these funds would escape both the bankruptcy estate and the collection efforts of Avant.

Also of note: Avant served writs of garnishment—one set issued May 18, 2016, and another set issued June 13, 2016—on the Bear Creek entities, seeking to collect its judgment from money owed by the Bear Creek entities to Strathmore. Despite the Bear Creek entities' filings in the bankruptcy court acknowledging the management agreements with Strathmore, all three Bear Creek entities filed garnishee disclosures in the district court, on June 16, 2016, and on July 5, 2016, stating that they were "not indebted to [Strathmore] for any amount," "no

money owed." The Bear Creek entities continued to file monthly reports in the bankruptcy court detailing expenditures, including copies of checks paid to Terra.

In August 2016, Avant filed a "Motion to Supplement Judgment," pursuant to Federal Rule of Civil Procedure 69(a)(1), in which it asked the district court to order that sums owed to Strathmore under the management agreements be paid only to Avant until Avant's judgment was satisfied, that Terra be added to Strathmore's judgment as a judgment debtor, and that monies paid to Terra under the management agreements from June to August 2016 be paid to Avant in satisfaction of Avant's judgment. Inexplicably, Avant neither served Terra with the motion nor sought to add Terra as a party to its enforcement action.

Strathmore objected to Avant's motion on various grounds, two of which are relevant to its appeal. First, Strathmore argued that because Avant had not challenged the *Bear Creek entities'* garnishee disclosures, which stated that no money was owed from Bear Creek to Strathmore *on the dates of those disclosures*, Avant was somehow barred from asserting that Bear Creek owed money to Strathmore at *any time* in the future, and Avant was therefore barred from attempting to collect its judgment out of money that Bear Creek might come to owe Strathmore.

Second, Strathmore challenged the proposal to make Terra pay Avant or to join Terra as a judgment debtor to Strathmore's debt, complaining that such a remedy was not justified when Terra had not been served with a complaint or with Avant's motion, nor been a party to the underlying Connecticut litigation.

After a hearing at which Avant, Strathmore, and Terra were all represented by counsel who had entered appearances, the district court granted Avant's motion and, on September 15, 2016, entered an order in Avant's favor. In that order, the district court found that Chappelle

managed and controlled Strathmore, Terra, and the Bear Creek entities, and that the Bear Creek entities had been paying Terra, instead of Strathmore, for services provided under the two management agreements. The order provided in relevant part:

1. The Bear Creek Entities are restrained from distributing management fees or any other monies owing to [Strathmore] and/or Terra Holdings, including those amounts due under the Management Agreements, to any party other than [Avant], unless otherwise permitted by this Court, until the Judgment has been satisfied;

2. Terra Holdings, L.L.C. a/k/a Terra Holdings Operating, the sole member of [Strathmore], is added as a judgment-debtor to the Judgment and shall be jointly and severally liable for all sums due and owing under the Judgment as if an original party to the Judgment;

3. All monies paid to [Strathmore] after June 1, 2016, including but not limited to management fees and any other monies paid to [Strathmore] under the Management Agreements, must be paid to [Avant] within 5 days of entry of this Order, which will be applied to the satisfaction of the amounts owing under the Judgment;

4. All monies paid to Terra Holdings after June 1, 2016 relating to the Bear Creek Entities, including but not limited to management fees and any other monies paid to Terra Holdings under the Management Agreements, must be paid to [Avant] within 5 days of entry of this Order, which will be applied to the satisfaction of the amounts owing under the Judgment;

5. Until the Judgment is satisfied in full, [Strathmore], Terra Holdings, and the Bear Creek Entities are prohibited from assigning or transferring the Management Agreements to any other party or from terminating the Management Agreements . . . .

R. 154 at 2–3.[1]

The order thus required Bear Creek, Strathmore, and Terra (in paragraphs one, three, and four) all to pay Avant any monies due to Strathmore under the management agreements, and prohibited them all (in paragraph five) from transferring those agreements. Only paragraph two

---

[1] The district court's order initially granted relief in *six* paragraphs, not five. Paragraph six conditionally granted Avant attorney's fees, to be awarded upon motion by Avant, but the district court later denied Avant's motion for attorney's fees. Paragraph six of the district court's order therefore has no remaining effect.

went so far as to add Terra as a "judgment debtor" to Strathmore's judgment, making Terra "jointly and severally liable" for Strathmore's debt. *Ibid.*

The order did not address the effect of the "no money owed" disclosures or the propriety of making Terra responsible for Strathmore's debt (and making Terra a judgment debtor) without service of the motion upon Terra or joinder of Terra as a party. Notably, Strathmore did *not* object to the order on the grounds that it reached too far in restraining *Bear Creek*'s actions, even though Bear Creek had also not been served or made a party to Avant's enforcement action.

At a hearing held by the district court on September 14, 2016, the day before it issued this order, the district court asked Strathmore's lawyer, Thomas R. Eckhardt, about the payments that the Bear Creek entities had made to Terra in June, July, and August 2016. Mr. Eckhardt admitted that Bear Creek had made management-fee payments *before* June 1, 2016, but denied that Bear Creek had paid any management fees to anyone *since* June 1, and stated that Terra was "assisting with the management of Bear Creek" "for free." Rather than paying *management* fees, Mr. Eckhardt argued, Bear Creek was paying "expenses" such as "maintenance fees, utilities, any sort of typical operation of the property." Those expenses would be distinct from any management fees, Mr. Eckhardt argued, and although the bankruptcy court *allowed* Bear Creek to pay Strathmore a management fee, it did not *require* the payment of any such fee. The check stubs from the June through August payments to Terra, though, are revealing: some have maintenance-related entries such as "Replace door sweep $25.00," but others have entries like "al- montly [sic] closing, account $5,225.00," "rene- operations management $233.75," and "Rene- timesheets, correctio [sic] $1,763.75," which at least appear to be more reflective of management fees, even if they are itemized rather than stating explicitly the three-percent-of-revenue payments expressly contemplated by the management agreements. The district court

also asked Terra's lawyer, Sheri B. Cataldo, about the checks. Ms. Cataldo also denied that Terra had been paid any management fees since June 1, 2016, and denied knowledge of whether any such fees had been paid prior to that date.

Avant's lawyer, Lisa A. Hall, countered by showing that (1) Bear Creek's financial-projections disclosure filed in the bankruptcy court on September 2, 2016 (less than two weeks before the motion hearing in the district court), reflected a three-percent-of-revenue fee payable by the retail and residential Bear Creek entities (with projected amounts of $2,268 and $6,777 per month, respectively), (2) Bear Creek's disclosure statement filed the same date states that "[the Bear Creek] properties are operated and managed by a management company, Strathmore . . . ," and (3) the dollar amounts listed ($2,268 and $6,777) "correlate exactly to the two payments that they have disclosed they are now paying Terra after we filed this [May 18, but not June 13] garnishment." Ms. Hall was apparently referring to two May 31, 2016, payments listed in a Bear Creek disclosure (attached to Avant's motion as Exhibit I) that was filed in the bankruptcy court on June 20; that disclosure lists two checks payable by Bear Creek to Terra, in the amounts of $2,266.27 and $5,778.75—these amounts are not "exactly" the dollar amounts listed in the financial-projections disclosure, but the first is very close and the second is very close to exactly $1000 off.

The district court considered the arguments and said, "I do believe that what is happening here is that Mr. Chappelle and his various intertwined entities are making every effort to avoid paying a judgment which correctly or not they believe is not fair to them, but it is in fact a judgment of a federal court pursuant to a binding arbitration ruling."

After the district court issued its order granting relief, Terra filed a motion for reconsideration, which the the district court denied. Subsequent filings in the district court

reflect a payment by the Bear Creek entities to Avant in the amount of $18,339.37, but the remainder of Strathmore's judgment debt has apparently not yet been paid.

The primary issue on appeal is whether the district court erred in ordering relief in favor of Avant and against Terra when Terra had neither been served with the enforcement motion nor joined as a party. We reverse the district court as to the relief it granted in paragraph two of its order because under applicable Michigan law, Avant may bring a *claim* against Terra to join it as a judgment debtor to Strathmore's debt (that is, to pierce Strathmore's veil and hold its parent, Terra, liable for Strathmore's debt), but the district court erred in so joining Terra to Strathmore's debt in the absence of such a veil-piercing claim.

Terra, however, has not presented, and has thus forfeited, any arguments that would challenge the relief ordered by the district court in paragraphs other than paragraph two. It was also within the district court's authority to garnish payments that Bear Creek came to owe Strathmore. We therefore affirm the district court's order except as to paragraph two. This outcome grants Avant most of the relief it seeks and seems fairly to balance the equities in light of (1) the district court's recognition of Chappelle's significant role in managing the Bear Creek entities, Terra, and Strathmore; (2) Michigan's respect for the corporate form; and (3) Avant's failure to serve Terra or join Terra as a party to its enforcement action. Should Avant wish to join Terra as a judgment debtor to Strathmore's debt, it is free to file a claim against Terra to do so.

## II

### *Terra's Question Presented*

Terra's brief raises one issue on appeal: whether the district court erred when it added Terra as a judgment debtor with joint and several liability for Strathmore's debt "where, as a

matter of law, a proceeding supplementary to judgment may not be used in Michigan to enter an additional judgment against a nonparty to the action." Terra's Br. 2. Terra's statement of the issue challenges *only* paragraph two of the order, which makes Terra a joint judgment debtor, and it does not challenge the provision in paragraph four of the order that, alternatively, requires Terra to pay toward Avant's judgment any monies it received from Bear Creek after June 1, 2016, "including but not limited to management fees and *any other monies* paid to Terra Holdings under the Management Agreements" (emphasis added).[2]

### Strathmore's Question Presented

Strathmore's brief raises a different issue: whether the district court erred in granting relief against Strathmore and the Bear Creek entities where the Bear Creek entities "had filed garnishment disclosures indicating that no money was owed to Strathmore that were not contested by Avant according to the requirements of the Michigan Court Rules."

Avant does not take issue with the proposition that by failing to contest the Bear Creek entities' garnishee disclosures, Avant "accepted as true" the statements that no money was owed

---

[2] In its reply brief, Terra re-emphasized its statement of the issue:

> Avant misapprehends the issue on Appeal. Avant has re-characterized the issue as being whether the "district court reversibly erred by allowing management fees owed to Terra Holdings or Strathmore to satisfy Avant's Judgment against Strathmore." This is incorrect. The issue is not merely whether the District Court erred in ruling that the management fees should go to Avant, **but rather**, whether the Court erred in ruling that Terra Holdings, a previous non-party to this action, *should be added to the Judgment* as a judgment debtor with joint and several liability (e.g., under principles of "piercing the corporate veil") where, as a matter of law, a proceeding supplementary to judgment may not be used in Michigan to enter an additional judgment against a non-party to the action.

Terra's Reply Br. 1 (first emphasis added; second emphasis in original). Moreover, Terra's brief makes clear that Terra understood the distinction between, on the one hand, the district court's grant of relief to Avant that would allow Avant to collect its judgment out of monies paid to Terra in connection with the Bear Creek management agreements, and, on the other hand, the relief granted in paragraph two that makes Terra jointly and severally liable for Strathmore's debt as a fellow judgment debtor. *See, e.g.*, Terra's Br. 4–5 ("Plaintiff requested that the trial court order *either* (1) that all income derived from [the management agreements] be paid directly to Avant to satisfy the Judgment; *or* (2) in the alternative, that [Terra] should be added to the judgment as a judgment debtor by piercing the corporate veil.") (emphases added).

by Bear Creek to Strathmore *on the dates of those garnishee disclosures* (June 16 and July 5, 2016). But Strathmore cites no authority for the proposition that Bear Creek's garnishee disclosures somehow impair Avant's ability to collect its judgment from Strathmore forevermore, including Avant's ability to collect its judgment from Strathmore out of funds that *Bear Creek came to owe Strathmore* at some point after the date of those disclosures. Thus, Avant correctly argues, "the relief ordered by the trial court is not inconsistent with accepting as true the statements made in the Bear Creek Entities' disclosures."

Strathmore is correct that Avant could have pursued litigation against the Bear Creek entities to challenge the disclosures that those entities filed—but Avant was not seeking to establish *Bear Creek's* liability; Avant was seeking rather to establish its right to collect its judgment from any money that Bear Creek might pay to Strathmore. Presumably Avant did not expect the Bear Creek entities to file "no money owed [to Strathmore]" disclosures in the Western District of Michigan when those entities received express dispensation *to pay money to Strathmore* from the bankruptcy court. Avant's choice not to become further involved in litigation against the *Bear Creek entities* when those entities *did* file such disclosures does not have any effect on the validity of the relief ordered below.

We therefore affirm as to Strathmore and devote the remainder of this opinion to our resolution of the merits of Terra's issue on appeal.

## III

### A

The parties agree that the proceedings in the district court were governed by Federal Rule of Civil Procedure 69, which provides in part: "The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the

state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). And the parties agree that Michigan Court Rule 2.621 provides the applicable "procedure":

> (A) Relief Under These Rules. When a party to a civil action obtains a money judgment, that party may, by *motion* in that action *or* by a separate civil action:
> (1) obtain the relief formerly obtainable by a creditor's bill;
> (2) obtain relief supplementary to judgment under MCL 600.6101–600.6143 and
> (3) obtain other relief in aid of execution authorized by statute or court rule.

Mich. Ct. Rule 2.621 (emphases added).

In its order (and, more clearly, in its order denying the motion to reconsider), the district court looked to Mich. Comp. Laws § 600.6104, which enumerates several post-judgment powers:

> After judgment for money has been rendered in an action in any court of this state, the judge may, on motion in that action or in a subsequent proceeding:
>
> (1) Compel a discovery of any property or things in action belonging to a judgment debtor, and of any property, money, or things in action due to him, or held in trust for him;
>
> (2) Prevent the transfer of any property, money, or things in action, or the payment or delivery thereof to the judgment debtor;
>
> (3) Order the satisfaction of the judgment out of property, money, or other things in action, liquidated or unliquidated, not exempt from execution;
>
> (4) Appoint a receiver of any property the judgment debtor has or may thereafter acquire; and
>
> (5) Make any order as within his discretion seems appropriate in regard to carrying out the full intent and purpose of these provisions to subject any nonexempt assets of any ***judgment debtor*** to the satisfaction of any judgment against the judgment debtor.

Mich. Comp. Laws § 600.6104 (emphasis added).

Terra's primary objection is that § 600.6104(5) grants discretion only to reach the assets of a "judgment debtor" (Strathmore)—not to add a new judgment debtor without process of law, not to pierce the judgment debtor's (Strathmore's) veil to add a new judgment debtor (Terra), and not to use fraudulent-transfer law to disgorge assets from someone other than the judgment debtor.

B

We review the district court's interpretation of state law de novo, but, to the extent that the district court properly held that the state law authorized discretion in making a given determination, we review the district court's *exercise* of that discretion for abuse. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 524 (6th Cir. 2006); *Arbor Farms, LLC v. Geostar Corp.*, 853 N.W.2d 421, 431–32 (Mich. Ct. App. 2014); *cf. Rogers v. Webster*, 779 F.2d 52, No. 84-1096, 1985 WL 13788, at *1 (6th Cir. 1985) (per curiam) (unpublished table decision) (noting that "Michigan has given its courts extremely broad authorization to aid execution on their judgments," and citing Mich. Comp. Laws § 600.6104(3)–(5), in support of the holding that Michigan law empowered the district court to compel a debtor to turn over stock certificates even when the certificates were located in Canada).

C

With that in mind, the Michigan Court of Appeals has held, in a case fairly similar to this one, that Michigan courts' post-judgment enforcement powers under Mich. Comp. Laws § 600.6104 *do not* allow a court to pierce a judgment debtor's veil in order to enter a judgment against the debtor's shareholder "where there was no underlying arbitration award or judgment to that effect." *Green v. Ziegelman*, 767 N.W.2d 660, 665 (Mich. Ct. App. 2009).

In *Green*, plaintiffs sued and—following arbitration—won a judgment against Ziegelman Architects, but did not sue Norman H. Ziegelman, the defendant's sole shareholder, director, and officer. In post-judgment proceedings, after conducting post-judgment discovery and learning that Ziegelman Architects "had no assets and only $400 in accounts receivable," plaintiffs filed a motion to pierce the corporate veil and impose liability on Ziegelman personally for the amount of Zeigelman Architects' debt. *Id.* at 664. The circuit court granted the motion, relying on its discretion under Mich. Comp. Laws § 600.6104. *Ibid.*

On appeal, the court of appeals held that subsection § 600.6104(5) was "the only provision [in § 600.6104] that could conceivably support the circuit court's ruling; however, on close examination of the language in § 6104(5), it is clear that it did not authorize the entry of the judgment against Ziegelman." *Id.* at 667.[3] The court held further that although § 600.6104(5) allows a court "discretion" to make "any order" that "seems appropriate," its discretion *under § 600.6104(5)* extends only to enforcing the judgment against the "judgment debtor" and not to veil-piercing actions to enforce the judgment against "a party not previously subject to a judgment on the claim at issue" like Ziegelman. *Ibid.* But in the same paragraph, the court "emphasize[d] that this case does not involve allegations of an unlawful transfer of property from [Ziegelman Architects] to Ziegelman in avoidance of attempts to collect on the judgment, nor allegations that Ziegelman possessed assets legally belonging to [Ziegelman Architects]. *See* MCL 600.6110, 600.6116, 600.6119, 600.6122, and 600.6134." *Ibid.* The court did not clarify

---

[3] Avant argues that because "the district court did not indicate which provision of § 6104 it was applying," the district court's order could have been proper under § 600.6104(3), which allows a court to "[o]rder the satisfaction of the judgment out of property, money, or other things in action, liquidated or unliquidated, not exempt from execution." We agree in part. Section 600.6104(3) is broad enough to justify *the portion* of the district court's order that obligates Terra (without making Terra jointly and severally liable for the debt) to pay Avant's judgment out of funds it has received "relating to" the Bear Creek entities, and, in any event, Terra has forfeited any arguments that it might have raised to challenge that portion of the order.

the circumstances under which a party in the position of a plaintiff like Avant *would* be able to use § 600.6104(5) to pierce a judgment debtor's veil.

Seven years after *Green*, the Michigan Court of Appeals wondered aloud how a judgment plaintiff should, procedurally, go about pursuing a veil-piercing remedy against a judgment debtor's shareholder:

> We know that supplementary proceedings under MCR 2.621 and MCL 600.6104(5) cannot be utilized, *see Green v. Ziegelman*, but must the remedy be pleaded as part of the original case or forever be barred? Or can a new case be filed to enforce the outstanding judgment against responsible shareholders if the facts allow piercing of the corporate veil even if no separate cause of action has been pleaded?

*Gallagher v. Persha*, 891 N.W.2d 505, 509 (Mich. Ct. App. 2016) (citation omitted).

In 2012, the plaintiffs in *Gallagher* sued Kaper Properties, Inc., for breach of contract, and sued Kaper's sole shareholder, Kathleen Persha, for breach of fiduciary duty, winning a judgment against Kaper only. In 2014, plaintiffs brought a new suit against Persha alone, asserting claims of fraud, misrepresentation, breach of fiduciary duty, and "piercing the corporate veil of Kaper based on the facts presented in the 2012 case." *Gallagher*, 891 N.W.2d at 507. The trial court granted Persha's motion for summary disposition as to the fraud and misrepresentation claims, and the trial court dismissed the breach-of-fiduciary-duty claim based on the prior dismissal of the same claim in the 2012 litigation. The trial court then dismissed the veil-piercing claim on the grounds that "it was no longer supported by an underlying cause of action." *Id.* at 507. Plaintiffs moved to reinstate the 2012 litigation as to Persha only, so that plaintiffs could therein move to pierce Kaper's veil and hold Persha personally responsible for the judgment against Kaper. *Ibid.* But the trial court denied that motion on the basis that "there is no independent cause of action for a claim for piercing the corporate veil." *Ibid.*

The Michigan Court of Appeals reversed, holding that although "piercing the corporate veil is merely a remedy to be applied in certain limited circumstances" (which our court has recognized as well, *see, e.g.*, *In re RCS Engineered Prod. Co., Inc.*, 102 F.3d 223, 226 (6th Cir. 1996)), "plaintiffs were entitled to bring a new action in an attempt to enforce the prior [Kaper] judgment against Persha." *Id.* at 513. After examining other jurisdictions' approaches to similar problems, the court held that it "make[s] sense" to allow veil piercing even when the shareholder was not part of the underlying cause of action: "liability is imposed because the fact-finder has concluded that the individual so misused the corporation that it was unable to pay *on the outstanding judgment* and an injustice would occur if the corporate form was not ignored." *Id.* at 514. The court also stated that "when a judgment already exists against a corporate entity, an additional cause of action is not needed to impose liability against a shareholder or officer if a court finds the necessary facts to pierce the corporate veil." *Id.* at 515.

This last statement on its own would seemingly substantiate that the district court in this case, upon finding the necessary facts, could have imposed liability upon Terra for Strathmore's judgment without "an additional cause of action"—meaning, perhaps, without bringing a cause of action against Terra at all. But in context, it is clear that what the Michigan Court of Appeals is saying is *not* that a court could pierce a judgment debtor's veil to reach a shareholder without bringing *any* cause of action against the shareholder, but *rather* that a court may entertain an action to pierce a judgment debtor's veil without any *additional underlying, substantive* cause of action against the shareholder. This reading of *Gallagher* is also consistent with *Green*, on which the *Gallagher* court heavily relies.

Thus, while Mich. Comp. Laws § 600.6104 provides a court with broad post-judgment discretion to aid a judgment plaintiff in collecting from a judgment debtor, Michigan caselaw

does not support the proposition that a court applying § 600.6104 may pierce the veil of a judgment debtor (like Strathmore) to hold a parent entity (like Terra) liable for its subsidiary's judgments when the parent is neither a party to an enforcement action nor a party to the underlying cause of action. The district court here may well have found facts that would be sufficient to pierce Strathmore's veil and hold that Terra was using Strathmore as its alter ego to avoid paying Avant's judgment, and the equities may tip well in Avant's favor, but Michigan law would still require Avant to bring a claim against Terra to hold Terra jointly and severally liable for Strathmore's debt.

D

In denying Terra's motion for reconsideration, the district court first distinguished *Green* and *Gallagher*:

> [T]he Michigan court of appeals emphasized in *Green*, 767 N.W.2d at 667, that the case before it did *not* involve "allegations of an unlawful transfer of property from [the judgment debtor] to [defendant] in avoidance of attempts to collect on the judgment, nor allegations that [defendant] possessed assets legally belonging to [the judgment debtor]." In contrast, as more fully stated at the hearing on Plaintiff's motion on September 14, 2016, Plaintiff in the case at bar made the requisite showing of unlawful conduct that merited the exercise of the Court's enforcement jurisdiction.

R. 159 at 2 (alterations in original). The district court then cited two additional cases in support of its denial of the motion to reconsider:

> Because the case at bar is factually distinguishable from *Gallagher* and *Green*, [Terra]'s motion demonstrates no error, palpable or otherwise, that requires a different disposition. *See, e.g.*, *Presidential Facility, LLC v. Pinkas*, 607 F. App'x 473, 475 n.1 (6th Cir. 2015) (distinguishing *Green* and adding a third-party holder of property to the supplemental proceeding); *Ryan Racing, LLC v. Gentilozzi*, No. 1:12-cv-488, 2015 WL 728468, at *4 (W.D. Mich. Feb. 19, 2015) (distinguishing *Green* and denying a motion to dismiss the supplemental proceeding).

*Ibid.*

But, crucially, in both *Presidential Facility* and *Ryan Racing*, the respective courts permitted judgment plaintiffs to join entities other than the judgment debtor *as parties* to enforcement actions in order to pursue theories of fraudulent transfer or veil piercing. *See Presidential Facility*, 607 F. App'x at 474; *Ryan Racing*, 2015 WL 728468, at *2–4. Indeed, in *Presidential Facility*, rather than using Mich. Comp. Laws § 600.6104, the plaintiff sought to join the new parties to its post-judgment proceedings under § 600.6128, which expressly *requires* a judgment creditor to join an entity as a party to a post-judgment proceeding to pursue relief against that entity. *Presidential Facility*, *Ryan Racing*, and § 600.6128 thus do not support piercing Strathmore's veil to make Terra a judgment debtor without joining Terra as a party.

The district court thus erred in ordering the relief it granted Avant in paragraph two of its post-judgment order.

**IV**

As noted above, Terra's briefing on appeal has not challenged any of the relief granted by the district court except for the relief granted in paragraph two of the district court's order. At oral argument, however, Terra responded to questions by claiming that it also intended general challenges to jurisdiction and due process. Before concluding that the district court did not err in ordering the relief it granted in paragraphs other than paragraph two of its order, we pause to consider Terra's implied arguments as to jurisdiction and due process.

As for jurisdiction, Terra did not contest the district court's jurisdiction in the proceedings below, nor did Terra raise any jurisdictional arguments in its brief, and thus waived any personal-jurisdiction objection that it might have had; moreover, Terra is a Michigan Limited Liability Corporation and is thus subject to the district court's in personam jurisdiction on account of Terra's citizenship in Michigan.

As for due process, Terra made mention of due process in its brief only as part of its argument against being held jointly and severally liable for Strathmore's judgment debt, Terra's Br. 16–17, 20–21, but Terra has not articulated any argument that would warrant reversal of paragraphs one, three, four, or five of the district court's order for denial of due process. Rather, the record makes clear that Terra *had* both actual notice of the post-judgment proceedings against it and an opportunity to be heard when it actually appeared and argued at the district court's hearing on Avant's motion to supplement the judgment, and when it filed its motion for reconsideration. R. 157.

Indeed, the Federal Rules of Civil Procedure expressly contemplate a district court's issuance of an order granting relief against a nonparty. *See* Fed. R. Civ. P. 71 ("When an order grants relief for a nonparty *or may be enforced against a nonparty*, the procedure for enforcing the order is the same as for a party.") (emphasis added); *Irwin v. Mascott*, 370 F.3d 924, 931–32 (9th Cir. 2004); *see also Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323–24 (9th Cir. 1998) (holding that a nonparty may properly be held in contempt if the nonparty has notice of the court's order and either abets the defendant in violating the order or is "legally identified" with the defendant); *Westlake N. Prop. Owners Ass'n v. Thousand Oaks*, 915 F.2d 1301, 1304 (9th Cir. 1990) ("Rule 71 was intended to assure that process be made available to enforce court orders in favor of and against persons who are properly affected by them, even if they are not parties to the action."); *NLRB v. Sequoia Dist. Council of Carpenters*, 568 F.2d 628, 633 (9th Cir. 1977); *Stotler & Co. v. Able*, 870 F.2d 1158, 1164 (7th Cir. 1989); *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 972–73 (3d Cir. 1982).

We therefore uphold the relief ordered by the district court in paragraph one (restraining Bear Creek from paying monies it owes Strathmore or Terra to anyone other than Avant),

paragraph three (requiring Strathmore to remit to Avant any monies that it receives from any source), paragraph four (requiring Terra to pay to Avant all monies "relating to the Bear Creek entities" including under the management agreements), and paragraph five (prohibiting Strathmore, Terra, and the Bear Creek entities from assigning, transferring, or terminating the management agreements) of its order. Paragraphs one and three do not even restrain Terra. And nothing in Michigan law would appear to prevent the district court from—as in paragraph four— ordering a nonparty like Terra to pay Avant out of funds that were legally Strathmore's,[4] such as, presumably, all monies paid by Bear Creek under the management agreements, or from restraining Terra (as in paragraph five) from redirecting funds to be paid by Bear Creek under those agreements.

## V

In sum, the district court jumped the gun: it made Terra a jointly and severally liable judgment debtor on Strathmore's judgment debt before Terra had even been served with an enforcement motion let alone served with a complaint. But Terra has presented grounds for reversing only that provision—paragraph two—of the district court's post-judgment order. Terra has not shown that the district court erred in awarding the relief it granted in paragraphs one, three, four, and five of that order.

Accordingly, we **AFFIRM** the district court's post-judgment order entered September 15, 2016, except as to paragraph two, **REVERSE** said order as to paragraph two only, and **REMAND** for entry of a revised order consistent with this opinion.

---

[4] Chappelle's deposition testimony in the bankruptcy proceeding lends support to the notion that Terra has acquired funds that were legally Strathmore's under the Bear Creek management agreements. *See, e.g.*, R.142-10 at 9–14.